# Thompson's Appeal.

An illiterate testator died seised of a certain farm which, for some years prior to his death, he had leased on shares. By his will he directed that the farm should be rented until his youngest child should come of age. He further provided that his wife should live on the farm, and that she and her minor children should have "one-half of the income of said farm" for their support. He then further directed that the farm should not be sold until his youngest child came of age, and that in the meantime, it should be rented. The executors leased the farm on shares as testator had been accustomed to do, the total annual product thereof being about $1,400. Upon the filing of the account of the executors, *Held*, that testator intended his widow to have one-half the annual product, viz.: all that did not belong to the tenant, and that he did not intend her to take merely one-half of the amount annually realized by his executors.

May 4th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Orphans' Court of *Union county* : Of July Term 1882, No. 6.

Appeal by Rachel Thompson and B. F. Thompson, executors of Benjamin Thompson, deceased, from a decree of the said court, sustaining certain exceptions to the report of an auditor in the matter of their account as executors, and surcharging them with one-half the net income of a certain farm.

The facts of the case were as follows : Benjamin Thompson died September 28th 1872, having by his will directed, inter alia, as follows :

"First : It is my Will, and I do order, that all my just debts and funeral expenses be duly paid and Satisfied, as Soon as conveniently can be after my decease.

"Item. It is my will and I direct that my farm in Buffalo Township Union County Shall be rented until my youngest child living, Shall become of age, by my hereafter named executor, and be kept in a good State of cultivation, and repair.

"Item. It is my will that my beloved wife Rachel Shall live and reside on my Said fam Occupy as much of the buildings on the Same, as may be convenient, and to make her comfortable and any of her daughters not of age to live with her, and She and child or children not of age Shall have one half of the income of Said farm, for there Suport.

"Item. It is my will and I direct that my Said farm Shall not be Sold untill my youngest chilld would be twenty one years of age if living. Should She Sooner die and continue to be rente for the Suport of my Dear wife aforesaid. Should however my Said wife and youngest Daughter die before Said term, then if there any of my daughters unmarried, She or they Shall Occupy the premises. Same, as is provided, for the mother until Said term is Expired."

[Thompson's Appeal.]

The testator appointed his wife Rachel and son Benjamin F. Thompson to be his executors. They filed an inventory and took possession of the farm, which they continued to rent on shares, in the same manner as the testator had done in his lifetime. The widow continued to occupy the mansion house on said farm, with her minor and unmarried children, and received and used the one-half the produce of the farm for the support of herself and family. It appeared that she also paid thereout some debts of her husband, and some expenses of the farm. The tenant on shares received the other half of the produce. The entire produce of the farm amounted annually to about $1,400.

The said executors were discharged by the court in May 1877, and letters of administration c. t. a. were granted to George M. Royer, by whom the said farm was sold, under an order of court, for the payment of debts. The account filed by Rachel and B. F. Thompson, executors, was excepted to by said Royer and others, and the exceptions were referred to an auditor (Wm. Van Gezer, Esq.). The only exception material to the present case was that " the accountants had not charged themselves with the produce raised on the farm from the date of testator's death to the filing of the account." In refusing to sustain this exception, the learned auditor reported as follows :

" It was strenuously contended on behalf of the exceptants that the testator, when he gave to his wife ' one-half of the income of said farm ' meant by the term ' income ' what is generally known as the landlord's share, and that as but one-half of this was bequeathed to the widow, he therefore died intestate as to the other half, which would belong to his children and heirs and therefore the accountants should be charged with the same. There is no residuary clause in the will which might have absorbed this undisposed-of undivided half. The question therefore recurs, did he suppose that he was disposing of his entire estate, both present and future, or did he intend to die intestate as to the undivided half of the ' income.' He orders the farm to be rented, and is disposing of the future income or proceeds. He orders the farm to be sold, and is exceedingly careful as to how the proceeds shall be distributed. He disposes of everything he had, and can we suppose for a moment that he intended to die intestate as to the one half of the income, which would have to be distributed, not under his will, but under the intestate laws of the commonwealth ? Did he not use the word ' income ' in its more general and comprehensive sense, that the income of the farm comprehended its entire annual production, embracing both the tenant's and the landlord's share, one-half of which, or the landlord's share, should go to his widow. We are inclined to think, and so rule, that he meant the latter,

for when we take this will by the four corners and view it with a judicial eye, we cannot suppose for a moment that he intended to die intestate as to any portion of his estate. If he intended, as the exceptants contend, he certainly would have made some disposition of the other half. And what strengthens this view of the case, is derived from the fact that his wife appears to have been the special object of his bounty and upon whom he imposed the burden of maintaining and educating his youngest daughter as well as his other unmarried daughters. . . . . Your auditor therefore feels constrained to overrule this exception."

George M. Royer, administrator c. t. a., and others excepted to the foregoing ruling of the auditor, and the court (BUCHER, P. J.) sustained their exception, saying, in an opinion filed: "The auditor reads the half to mean the whole, in which we cannot concur. It is a common understanding that the income of a farm to the owner is what it nets him above expenses. What he pays out is not income, but the reverse; it is outlay. When a farm is rented for the half, the other half is expense which the owner never receives. Had the testator intended that his widow should receive the whole, he would have said she shall receive the income; but he says she shall receive *one-half of the income.*

"Then he directs, ' that his farm shall not be sold until his youngest child shall reach twenty-one years, and continue to be rented for the support of my dear wife aforesaid,' showing that he contemplated a tenant. Then he further directs that ' the farm shall be rented by his executors and be kept in a good state of repair.' How was this to be done if the widow was to get the whole income? If the construction of the auditor is correct, nothing was left to pay testator's debts, nothing for taxes, fences, lime and necessary repairs. Under such a construction the longer the executors had the management of the farm the more it would deteriorate and decay. Surely when the testator said, that his wife should receive the one-half of the income and ordered his executor to keep the farm in repair, he meant the net half only. Then he did not die intestate as to the one-half of the income, because the power to rent implies the power to receive rent by the executor, and they receive such rent for the purpose of paying debts and keeping the farm in repair. Although it be true the widow took under the will as a purchaser, the devise to her being in lieu of dower, yet she was entitled to nothing until the debts were paid : Laughlin's Estate, 1 Barr 338.

"We are of the opinion, that the widow under the will is entitled to the one-half of the income of the farm; that is to say, the one-half of the landlord's share."

The court therefore entered a decree surcharging the accountants with the sum of $1241.37½, being one half of the "landlord's share" of the income of said farm from the testator's death to the date of the account. From this decree the accountants took this appeal.

*Dill* (*Beale* with him), for the appellants.

*Hayes* (*Orwig* with him), for the appellees.

Mr. Justice GORDON delivered the opinion of the court, May 15th 1882.

It is an elementary principle that, in the construction of a will, the intention of the testator must govern, and to this intention, when fairly discovered, technical language, and even the ordinary meaning of words, must give way. What we have to do in the case in hand is to discover, if we can, the intention of Benjamin Thompson, the testator, as it is expressed in the will which we have before us.

By the second item of that instrument, it is directed that the farm in Buffalo township, Union county, on which the testator resided immediately preceding his death, should be rented until his youngest child came of age. The second item provided that his widow should continue to reside upon this farm; that she should have such part of the buildings as might be convenient and comfortable for her use, and that she should have "one-half of the income of said farm," for the support and maintenance of herself and her minor children. Then, in the next clause, having in mind the same cardinal thought, that is to say, a comfortable support for his wife and younger children, he emphasizes the directions contained in the second and third items by providing that the farm should not be sold until the time arrived when the youngest child, if living, had reached the age of twenty-one years, and, in the meantime, it was to be rented for the purpose already indicated. Now we may admit that in the ordinary, commercial sense, the term "income," especially when connected with the word "rent," may mean net or clear income, and in that view of the case, the judgment of the court below must be taken as correct: the widow was entitled to but the one-half of the one-half, or one-quarter, of the product, or whole income of the farm. But in arriving at the meaning of words we must understand not only how, but by whom, they are used, otherwise the intent of the person using them may be wholly perverted. One may say that his income from a certain property amounts to a certain sum, and yet he may be speaking merely of the accruing rent, without regard to either insurance, taxes or repairs. The lumberman

4 OUTERBRIDGE.—31

who uses the timber from his own lands, will speak of the income from his business without considering the value of the stumpage, or even the interest of the money which the land cost him. And we well understand that, outside of business circles, it is so common thus to speak of income, that we can never know whether net or gross income is meant without further inquiry. Had Thompson, in his lifetime, spoken of being in the receipt of the one-half of the income of his own farm, we suppose no one would have misunderstood him; certainly not his neighbors who, like himself, were farmers, and who knew, from the general custom of the country, that the income of a farm was its entire product, which was to be divided between the owner and the tenant, or cropper. Nor do we see why, from the farmer's standpoint, this is not a correct application of the word. Worcester, among other definitions of this word, gives that of "produce."

But if we substitute "produce" or "product" for the word "income," as found in the will, the meaning of the testator is free from obscurity, for it is then clear that he intended to give his wife one-half of the annual crops of the farm, necessarily leaving the other half to the cropper. This interpretation of the will was adopted by the learned auditor, and we cannot see why he was not right.

Thompson was a farmer, and, judging from the language and style of his will, not a very learned one at that, and he spoke as a farmer. Before his death he had rented this farm "on the shares," as the agricultural term is, hence the rent which he received, or rather, reserved, was one-half of its whole income or produce. In other words, Thompson gave one half of the entire crop as a compensation to his farmer or cropper, and the other half was his own income, and that he should, in his will, in this manner speak of the product of his farm was the most natural thing in the world. Furthermore, it appears, from the finding of the auditor, that the entire product of that farm did not in value exceed the sum of fourteen hundred dollars, and we can hardly think that the testator intended that his wife and minor children, the prime objects of his care, should be limited to the scant subsistence which three hundred and fifty dollars would afford them. If, indeed, he did thus act the niggard with his wife and young children, we may naturally look for some reason for such conduct; for some other object of his bounty for whom the other half of his income was reserved. But for such reason or such object we look in vain. Though making the most careful disposition of all the rest of his property, he dies intestate as to the one-half of the net income of the farm. This is incredible. From the will it is manifest that this man intended to dispose of his whole estate, and yet,

adopting the interpretation of the court below, we have here so considerable a portion of his estate as one-half of the annual income left undisposed of.

It is true, if the previous part of the testament is to be read as the learned judge of the Orphans' Court has read it, then all we have to do is to shut our eyes to this omission, strange as it may appear; but as the construction put upon this instrument by the auditor not only avoids this difficulty, but, as we think, gives expression and force to the real intention of the testator, we are inclined to adopt it, and the rather that we thereby eliminate, not only this, but all other obscurities from the will.

The decree of the court below is now reversed and set aside, at the costs of the appellees, and the distribution recommended by the auditor is approved, and his report confirmed.

Amended decree, filed June 2d 1882.

It is now ordered that the decree of this court be amended so as to read as follows; to wit: that the decree of the court below is now reversed and set aside so far, and no further, as it surcharges the appellants with the sum of twelve hundred and forty-one dollars and thirty-seven and one-half cents, and said court is authorized to make any order necessary for the purpose of carrying this decree into full effect.

Costs to be paid by the appellees.